## CLEGG ET ALS. *vs.* ALEXANDER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

It is a legal presumption, which may be rebutted, that a bill of exchange is accepted on the existence of funds belonging to the drawer, in the hands of the acceptor or that the latter is indebted to the former.

In an action by the acceptor, against the drawer of an accommodation bill of exchange; proof must be made of the hand writing of the drawer; that the bill was put in circulation after acceptance, and payment was made to a person authorised to demand it.

An action by the acceptor against the endorser, cannot be sustained without proof, that the acceptance was made purely for the accommodation of the drawer.

This is a suit brought by plaintiffs against defendant, by attachment, the parties residing respectively in England and Ireland. The plaintiffs allege themselves to be accommodation acceptors for defendant, the drawer of a bill of Exchange for six hundred pounds sterling, drawn at Liverpool on the 28th January, 1831, at three months from date, and which fell due 1st of May. There was proof of the signatures, and that the bill was in circulation. The evidence that it was accepted for the accommodation of the defendant rests on three letters written by him; the first addressed to George A. Brown, who is proved to be a member of the plaintiffs' firm; the other two were addressed to the partnership.

The following extract is taken from the third letter, dated at Liverpool, 20th April, 1831, and addressed to Clegg, Brown & Co., at Manchester.

"GENTLEMEN:—I am in receipt of your esteemed favor of 16th instant, and hasten to give you an extract from Brown, Blandin & Co's. last advice, dated Tampico, January 1, 1831. 'We remitted a short time ago to William and James Brown & Co., Liverpool, for your account, six hundred and sixty pounds. After covering themselves for the advances made by them for your account, on your shipments to us, the balance will be at your disposition, of which please take notice.' Of this remittance on my account to William and James Brown & Co., I have in no way availed myself, calculating it would go to cover the cash advance, say three hundred and eighty-five pounds, and to meet the further sum of six hundred pounds, due 1st May; so that of course placing you in funds for six hundred pounds, came not into my calculations, for this or the succeeding month, particularly as the goods were shipped to Tampico, on the understanding with your Mr. G. Brown, that the one half of the amount of the invoice should be remitted for, on arrival of the goods; however, could I at this short notice do any thing in the way of remitting you funds, would be most happy; but my hitherto small means have been cramped by recent losses, of which I made you aware when in Manchester. Were this

43

not the case, and had I funds at my command, would instantly meet your views."

"According to agreement, I cannot draw for three hundred pounds, but I have already received one hundred and eighty-five pounds, more than I could demand."

The second letter corroborates the statements of the third relating to the bill in question.

The judge *a quo* considered the testimony insufficient to sustain the allegation that the bill was accepeted for the accommodation of the defendant, and a judgment of non-suit was entered. The plaintiff appealed.

*Leigh*, for plaintiffs and appellants contended:

That the judge *a quo*, erred in giving judgment as in case of non-suit against the plaintiffs, because it was proved on the trial that the plaintiffs were entitled to a judgment for the sum demanded by them, they having accepted the bill of exchange referred to in their petition, for the accommodation of the defendant, who is bound to indemnify them, it being in evidence, that they, as accommodation acceptors, paid the bill when it fell due.

*Strawbridge, contra.*

MATHEWS, J., delivered the opinion of the court.

This is a suit by the acceptors of a bill of exchange, against the drawer. The plaintiffs allege that it was accept-, ed without any funds or effects of the drawer in their hands and purely for his accommodation. That they paid the bill at maturity, after it had been put in circulation, and the defendant having failed to refund to them the amount thus paid for his benefit, the present suit is brought to recover it. Judgment was rendered for the defendant in the court below, from which the plaintiffs appealed.

It is a legal presumption which may be rebutted, that a bill of exchange is accepted on the exis-tence of funds belonging to the drawer, in the hands of the ac-
It is a legal presumption that a bill of exchange is always accepted, on the existance of funds belonging to the drawer, in the hands of the acceptor, or that the latter *is* indebted to the former; consequently the acceptor cannot legally make any claim against the drawer on account of having paid the

bill in an ordinary case. There is, however, an exception to this general rule, when the acceptance has been made without funds in hand, but purely for the accommodation and benefit of the drawer. In an action by the acceptor against the drawer, founded on a bill of this kind, to authorise a recovery, proof must be made of the hand writing of the drawer; that the bill was put in circulation after acceptance, and payment to a person authorised to demand it, &c.

EASTERN DIS.
*April*, 1834.

CLEGG ET ALS.
vs.
ALEXANDER.

ceptor, or that the latter is indebted to the former.

In an action by the acceptor, against the drawer of an accommodation bill of exchange; proof must be made of the hand writing of the drawer; that the bill was put in circulation after acceptance, and payment was made to a person authorised to demand it.

The evidence in the present case, as assumed by the court below, clearly establishes the facts of drawing by the defendant, of the bill having been put in circulation, after acceptance and payment by the acceptors to a person authorised to demand it. But the main fact, without which the action cannot be supported, the acceptance having been made, purely for the accommodation of the drawer, seems not to have been proven to the satisfaction of the judge *a quo*, who tried the cause without the intervention of a jury. To establish this fact several letters from the defendant to the plaintiffs are relied on. They are three in number; the first has little bearing on the question. From the tenor of the two last it appears that the defendant was in the habit of shipping goods from England to Mexico, consigned to Brown, Blandin & Co., of the latter place. To enable him to make those shipments, the second letter raises a presumption that William and James Brown, of Liverpool, were in the habit of making advances of money to be refunded on the return of proceeds, &c., they, however, declined an arrangement of that nature, at the time the bill in question was drawn on the plaintiffs, and was evidently accepted to supply the deficiency occasioned by the refusal of the house in Liverpool to make the advance which the necessity of the defendant required. According to the evidence afforded by this letter, and the last one dated in April, 1831, we fully believe that the acceptance was made for the accommodation of the drawer, and that he calculated to refund the amount thus advanced to him, by means of remittances expected from Mexico, no part of which were ever appropriated to that purpose, as is clearly shown by the last letter, which although expressed in terms

The action by the acceptor, against the endorser, cannot be sustained without proof, that the acceptance was made purely for the accommodation of the drawer.

EASTERN DIS,
April, 1834,

somewhat vague and indefinite, is in substance an acknow-ledgment to the plaintiffs of the debt claimed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, reversed and annulled. And it is further ordered, adjudged and decreed, that the plaintiffs 'and appellants do recover from the defendant and appellee, the sum of two thousand six hundred and sixty-six dollars, with interest at the rate of five per cent. per annum, from the 10th of September, 1832, the day of the judicial demand, until paid, with costs in both courts.