FRANÇOIS VALLETTE and another v. JOHN PATTEN and others.

Where the hulk of a vessel belonging to the plaintiffs, moored at the bank of a river, was sunk by the culpable neglect of defendants, who had attached two ships to it, and, though requested to fasten them properly, and warned of the consequences, and offered the means to prevent any injury, had neglected to use the proper precautions, they will be responsible to plaintiffs for the loss occasioned by their fault.

Though the hulk of a vessel, moored to the bank of a river, may obstruct its use, it cannot be destroyed by an individual, without authority of law, for the purpose of abating the nuisance. C. C. 857.

APPEAL from the District Court of the First District, *Buchanan*, J.

The plaintiffs allege that they are ship-wrights, having a ship yard at Duvergsberg, on the Mississippi river, in the parish of Orleans; that they were the owners of the hulk of a vessel which was attached to their ship yard, and fastened to the bank of the river, where it was used for heaving out and repairing vessels; that the ships Delaware and Sheffield, belonging to the defendants, were moored alongside of the said hulk, in so negligent and careless a manner, as to cause its total loss. The petition claims $500, as damages. The answer was a general denial. The testimony is stated substantially in the opinion found below. The District Court gave the plaintiffs a judgment for the amount claimed by them, and the defendants appealed.

*Peyton* and *I. W. Smith*, for the plaintiffs.

*Jewett*, for the appellants. The plaintiffs cannot recover, because the hulk was stationed and established, as a permanent " *work*," upon the public banks of the Mississippi, in open violation of law. It was permanently established and stationed at their private ship-yard, and as a part of the same, for no other object than to repair vessels or ships. It was a " *work*" which was necessarily calculated, in its operation and use by the plaintiffs, to hinder and embarrass the public use of the said banks. The law expressly prohibits all such " *works*."

It matters not whether the " *work*" be a warehouse, a wharf, or a means for repairing ships; nor whether it be continually in use, or only occasionally so; that is, whether it be more or

less a hindrance and embarrassment to the public use of the banks.

It matters not whether it has been constructed upon the spot, or, after having been constructed elsewhere, has been brought there and permanently stationed.

The river Mississippi is a *common highway*, and forever *free*, &c. 2 Story's Laws, 1224.

The *use* of the banks of navigable rivers is *public*. Civil Code, 'arts. 446, 857.

No *work* shall be made on the banks of the Mississippi *tending* to hinder and embarrass the public use thereof. Bullard & Curry's Dig. 748.

"*No building, or any other work, or fabrication*, is permitted to be made on" them (the banks of navigable rivers), which may prevent or hinder such use, or its enjoyment, to the full extent of public utility. 3 La. 567. 3 Mart. N. S. 140. 18 La. 278.

No man has a right to take exclusive possession of the banks of the Mississippi. No man can erect buildings and *works*, that will obstruct the free use of the banks by all men. 18 La. 307.

An injunction would lie against plaintiffs. Code of Practice, art. 298.

These violators of law must take the consequence of their own acts. 18 La. 308. Civil Code, art. 2303. 21 Wendell, 623. ,

The Delaware and Sheffield were properly fastened; but the hulk was not. The plaintiffs did not use the care in fastening their hulk, which the law exacts. 12 Pickering, 177. 18 La. 340. 2 Robinson, 204. 21 Wendell, 188.

The injury complained of was attributable to natural causes, or the perils of the sea. 2 Sumner, 202–6. 1 Phillips on Ins., 635–6. Abbott on Shipping, 258–9. Story on Bailments, p. 335, § 520.

Again: the petition states the loss to have been at Duvergsberg, which the court will judicially notice, as within the port of New-Orleans. If the hulk was within that port, it was illegally there. The evidence shows it was twenty years old, in a state of decay, and unfit for service. The law prohibits such a thing from remaining within the port of New-Orleans. Or-

dinances of the Second Municipality of New-Orleans, p. 95. Lastly, the damages are excessive.

GARLAND, J. The plaintiffs are ship carpenters, and have a yard on the Algiers side of the Mississippi, for the purpose of carrying on their business, in front of which they had had moored, for six or seven years, the condemned hull of a vessel, of about 200 tons, commonly called a hulk, for the purpose of enabling them to raise vessels, or heave them down, to make repairs. The hulk was moored with a chain cable, from the stem and stern, to spiles on shore, and *shears* or spars, with one end in the bank and the other let into the side of the hulk, to keep it off the ground. The ship Delaware, of 660 tons, belonging to the defendants, about the 13th November, 1842, came up the river under sail, and upon rounding the point below the yard, the master, finding the wind unfavorable, and that he could not get his ship into such a berth as he wished, drew his vessel alongside the hulk, and moored her with cables, fore-and-aft, to spiles on shore, and also to the stump of a mast on the hulk, with lines abreast to keep her from going ahead or dropping astern. The Delaware remained so moored for several days, without injury to the hulk, when the ship Sheffield, also belonging to the defendants, arrived; and, the weather being somewhat rough, she, with lines and cables, was made fast to the Delaware, with an anchor in the stream, to prevent her head touching that vessel. The Sheffield is a ship of about 500 tons. Both vessels had light cargoes, and were high out of the water. On the morning of the 19th of November, one of the plaintiffs went on board the Delaware, and told the officer in charge of her, that the ships were pressing his hulk against the bank, and requested him to get some spars and brace his vessel off, so as not to do it any injury. This request was not complied with; and that night the wind blew across the river very strong, and the ships pressed the hulk on the shore, and the water going down, from a foot to a foot and a half, after the gale was over, the hulk careened over on the side, and the water entering through the seams, which were very open, it sunk, with some chains used in raising vessels. This suit is brought to recover $500 damages, upon the allegation that the ships, particu-

larly the Delaware, were so negligently and unskilfully moored that they caused the damage. This is denied by the defendants, who have offered a great deal of testimony to prove that their vessels were properly moored, in accordance with the custom of the port of New Orleans. That they were so, as far as respects their own safety, there is no doubt; but as to the question, whether the safety of others was as well consulted, the testimony is very contradictory. The hulk cost the plaintiffs $400; they had used it about seven years, but one witness says he had known it for nearly twenty years. All agree that the seams, some two feet above the water, were open, and the caulking hanging out. Some of the witnesses swear that it was worth to the plaintiffs $500; but others say that the value was not more than $60 or $70. It was certainly very old, and much decayed, although some repairs had a short time before been made.

The case was tried by the judge, who, considering that the hulk was lost by the fault of the officers of the Delaware, and that it was worth $500, the highest estimate put on it by the witnesses, gave a judgment for that sum, and the defendants have appealed.

The main reliance of the plaintiffs is, that when the master, or mate of the Delaware, was requested to *shear* off his vessel with spars, and was told what would be the probable consequence if he did not. He neglected to do so. The officers of that ship swear that they had no spars long enough; that they considered it unnecessary, as the weather, when they turned in for the night, was mild and settled, and they had held on by the same tackling for a week, without damage to any one; and further, that it was the well-understood custom, that when two or more vessels were lying alongside of each other, that the one nearest the shore must prepare herself to bear the strain of the others. On the other hand, the plaintiffs prove that they had spars on the hulk long enough for the purpose, and offered to lend them to the officer in charge of the Delaware, and that it is very common in the port, that the second vessel from the shore braces off, so as not to injure the inside vessel, and also to enable it to sustain the strain of those outside. We think the

neglect, or refusal of the officers of the Delaware, to *shear* off the vessel, when they were requested to do so, and warned of the consequences, and offered the means of preventing an injury, was culpable, and subjects the owners to damages.

The counsel for the defendants urges, that the hulk was wrongfully at the bank of the river ; and quotes those articles of the Civil Code, which say that the banks of navigable rivers are free for public use, and that no one has a right to obstruct the use of them. This is very true ; but it is not shown that the hulk in question was an obstruction to the use of the bank of the river ; and if it were, it did not give a right to the agents of the defendants, without the authority of law, to abate the nuisance, by a destruction of the thing which caused it. Civil Code, art. 857.

The next ground of defence is, that the hulk was improperly and unsafely moored. The evidence proves the reverse of this. It had lain safely at the place for several years, and no injury had befallen it, until the defendants' ships forced it ashore. The counsel says that the ships had a right to be at the place, which is possibly true ; but they had no exclusive right to the use of the place, much less had they a right to destroy the property of a person enjoying a common right.

The next branch of the defence is, that the collision and damage was not caused by the negligence of the defendants, but by the perils of the sea. This position we do not consider tenable, for the reasons already stated. The officers of the Delaware could, we believe, have prevented the collision, by a very little trouble, and their indisposition to incur it, did not manifest a proper regard for the safety of the property of others. There is no reason to believe that the gale of wind would have sunk the hulk, if the ships had been properly braced off from the shore.

The last ground of complaint is, that the damages are excessive. In this opinion we concur with the counsel of the defendants. The judge has allowed $500. The hulk cost only $400, and had been used seven or eight years. The witnesses say that it was much decayed, and we can hardly suppose that time and use increased its value. It was a convenience to the

plaintiffs in their business, and the loss of it probably caused some embarrassment, until another could be procured, which the evidence induces us to believe it was not very difficult to do. The copper and chains were of some value, but as to what amount the testimony is very vague. We think the evidence will not justify an allowance exceeding one-half the sum given by the court below.

It is ordered and decreed, that the judgment of the District Court be annulled and reversed, and that the plaintiffs, Vallette and Thomas, recover of the defendants the sum of two hundred and fifty dollars, with legal interest from the 28th of April, 1843,* until paid, with privilege on the property attached ; the defendants to pay the costs in the District Court, and the plaintiffs those of this court.

---

* The date of the judgment below.