Morphy, J.
On rendering an account of his administration, the testamentary executor of this estate mentioned at the foot of it, that from the balance of .$91,950 49, accruing, to the" widow Collard, the sister and universal legatee of the deceased, a nonresident alien, there was to be deducted the tax of ten per cent ■thereon, imposed by the law of the 26th of March, 1842, on property inherited by, or bequeathed to any person not domiciliated in this State, and not being a citizen of any State or Territory in the Union. The universal legatee objected to the tax charged on the amount accruing to her, .on the ground, that said tax was-contrary to, and in violation of the constitution of the United States, and prayed that it might be stricken out of the executor’s-account. An opposition ivas then made'in the name of the State-Treasurer, in which the Attorney General joined, claiming on behalf of the State of Louisiana, the whole succession of Jean Mager, on the ground that the deceased, who was born a French *586 subject, became by naturalization a citizen of the United States, without-the consent or authorization of his government; that by this fact, he forfeited under the laws of France, all right of inheriting, or receiving donations, inter vivos or causa mortis, from his sister, the widow Collard, or from any other person in France ; that by our laws, donations niter vivos and mortis cau-sa cannot be made in favor of a foreigner, where the laws of his country prohibit similar dispositions from being made in favor of a citizen of this State. And that by reason of the reciprocity thus established, the widow Collard should not be permitted to take the legacy made to her by her brother, but that the same' should go to, and be paid into the State Treasury. The Probate Judge rejected both oppositions, and ordered the account to be homologated. From this judgment the universal legatee has appealed ; and in this court the Attorney General has asked, that it be affirmed so far as it maintains the tax in favor of the State, and that it be amended, so as to annul the legacy made to the widow Collard, and to decree the whole estate of the deceased to the State of Louisiana.
This court, on various occasions, has been called upon to decide questions arising under the law of the 26th of March, 1842, and the former law of 1828, imposing a tax on property inherited "by, or bequeathed to non-resident aliens j and we are not aware that the constitutionality of those laws has ever been questioned. 6 La. 336,561. 6 Rob. 504, 509. 9 Rob. 367. But it is now urged, that this tax is contrary to, and in violation of the constitution of the United States ; and we are referred to the eighth and tenth sections of the first article of that instrument. After a careful examination of the provisions therein contained, we are unable to see in what manner, either their letter, or even their spirit has been violated. We hold it to be an undeniable proposition, that each State of this Union, by virtue of its sovereignty, has the power to tax all persons and property within its limits, and that this right remains in the States concurrent and- co-existent with that of Congress, with the sole exception of duties on imports and exports, which the constitution has taken from the States, unless exercised with the consent of Congress. It cannot have been seriously urged by counsel, that the tax in question must be view *587 ed as an impost, or duty on imports and exports. By way of illustration, they have supposed the case of a foreign merchant dying here shortly after having imported a large quantity of goods, which would be subject to this tax, although duties had already been paid to the general government, and that of foreign heirs wishing to export the money or effects bequeathed to them, which they could not do without paying this tax. To this the answer is obvious. The tax is not imposed because the goods have been imported, or because the foreign heirs wish to export the money or effects bequeathed to them ; but because in both of the cases supposed, the property taxed is found in a succession opened in this State, and claimed by foreigners, whose right to inherit the same being derived from the laws of the State, can unquestionably be curtailed by posterior laws. The tax to which the Legislature have seen fit to subject the right of aliens to inherit property in this State, is due, whether such property has been imported or not, and whether the foreign heirs intend to export it or to leave it in the country. The accidental circumstance of the property having been imported recently, or being intended to be exported, cannot surely affect or diminish the right of the State to tax it, by bringing it within the constitutional prohibition on the States to lay a duty on imports and exports. The case of Brown v. The State of Maryland, quoted from 12 Wheaton, has no analogy to the present. The State of Maryland had passed an act requiring all importers of foreign goods by the bale or package, &c., to take out a license for which they should pay fifty dollars, &c. The grounds upon which the court put that case, were : “ That sale is the object of all importation of goods ; that, therefore, the power to allow importation implied the power to authorize the sale of the thing imported ; that a penalty inflicted for selling an article in the character of an importer, was in opposition to the act of Congress which authorized importation under the authority to regulate commerce ; that a power to tax an article in the hands of the importer the instant it was landed, was the same in effect as a power to tax it whilst entering the port; that consequently the law of Maryland, was obnoxious to the charge of unconstitutionality, on the ground of its violating two provisions of the constitution, the one giving to Congress the *588 power to regulate commerce, the other forbidding the States from taxing imports.” It is not pretended that the tax in question interferes with, or is contrary to any law of Congress regulating commerce, or any treaty subsisting between France and 'the United States, stipulating that no such tax shall be laid on the property of successions opened in either country, which may be claimed by inheritance or bequest, by the citizens of the other. Far from this being the case, iiis admitted on the record, l( that by the laws of France a tax or duty of six and a half per cent would be levied by the French government, on an inheritance falling to an American citizen, in the same degree of relationship to a decease ed French subject, as the opponent and universal legatee in this case bore to the late Jean Mager, the testator.” We conclude then, that the State of Louisiana having clearly acted within the scope of its powers in passing the siatute of 1842, it must be carried into effect, until some treaty is made, or some law is passed by Congress, inconsistent with its provisions. In the event of such a collision, the law of the State will have to yield, and become inoperative. *
■ The opposition made on behalf of the Stale has no better foundation than that of the universal legatee. It is based on article 1477 of the Civil Code of this State, and on two imperial decrees passed by the French government in 1809 and 1811, whereby it was provided, among other things, that if any French subject caused himself to be naturalized in a foreign conntry, without the consent of his government, he should incur the forfeiture of his property in France, should lose the right of inheriting, and that all successions opening in his favor should pass to the nearest heir, after him, entitled to take, &c. Art. 6, tit. 2, of the decree of 1811, It is argued, that as Mager, who was born in France, and who became naturalized here without the consent of the French government, could not have inherited from his sister, the widow Collard, had he been her nearest heir, she, under the principle of reciprocity established by the article above quoted, should not be permitted to receive any bequest from him. . It is in the first place extremely doubtful, whether the harsh decrees referred to have at the present time any force or validity, even in France, There is on this subject great diversity of views among *589 t'he French jurists ; but the better and more reasonable opinion seems to be, that they are inconsistent with, and have been repealed by posterior laws, and particularly by a law passed on the 14th of July, 1819, which unconditionally admits all foreigners to take by inheritance in France ; but, be-this as it may, the article 1477 of our Code, has in our opinion nq application to a case like the present. It establishes in relatio^to the validity of donations, inter vivos and mortis* causa, a principle of reciprocity between the two nation's. If American citizens can receive bequests in France, so can French subjects here. The decrees alluded to, if considered as being yet hr force, would not have denied to Jean Mager the right of inheriting from his sister in France on the score of his being an American citizen, but because as a French subject, he had offended against the municipal laws of his native country, by causing himself to be naturalized without the consent of his government. Had Mager in the same •way become a citizen of any other country than the United States, the consequences to him would have been the same in .relation to his right of inheriting in France, and yet the widow Collard’s claims to a bequest from him, could surely not have been disputed under the provision of our Code, which is now relied on. Can it be expected that we will punish Mager, or his heirs, because he thought proper to become an American citizen; that we shall give extra-territorial force and effect to municipal laws of France, denouncing penalties against French subjects, so as to visit upon one of our citizens consequences which, under an express article of the constitution of the United States, can be attached to, or made the punishment of no crime or offence, however lienious 1 But even were the strange position here assumed on behalf of the State, well founded in relation to the widow Collard’s right to receive the bequest of her brother, it would by no means follow that the succession of Mager could be claimed by the State. Being the sister, and one of the nearest legitimate heirs of the deceased, the widow Collard would be entitled to his succession by mere operation of law. Civ. Code, arts. 882, 945, 946. The State can only take when there is no one entitled to *590 an inheritance, or when it is not claimed by one having a right to to the same. Civ. Code, arts. 477, 911, 923.

Judgment afirme d.